Prepared by: EDWARD . BEACH                                    DATE: 00-07-2007

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

DC CIRCUIT

**FILED**

APR 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

EDWARD J. BEACH #19340-058

(plaintiff) FCI-Williamsburg
P.O. Box 340
v.       Salters, SC 29590

HARLEY LAPPIN

Case: 1:07-cv-00700
Assigned To : Leon, Richard J.
Assign. Date : 04/17/2007
Description: Beach v. Harley Lappin

EMERGENCY
WRIT OF MANDAMUS
(5 U.S.C. 301)

ACTION TO COMPEL AN OFFICER
OF THE UNITED STATES TO
PREFORM HIS DUTY
(28 U.S.C. 1361)

1. Plaintiff,EDWARD J. BEACH,is an individual doing busimess
   in this Judical District.

2. Defendant,HARLEY LAPPIN,is the Director of the office of
   General Counsel for the Bureau of Prisons for the United
   States Departmint of Justice.

3. This is an action to compel the Defendant to perform (his/her)
   offical duty and, therefore,this Court has Jurisdiction
   under the provisions of (28 U.S.C. 1361) and (5 U.S.C. 301).

4. Venue is proper this Court under the provisions of (28 U.S.C.
   1391 (e) because Defendant is a employee of theUnited States
   Department of Justice-Office of General Counsel-Bureau of
   Prisons, Washington,DC.

5. This is one in which Plaintiff seeks a Writ of Mandamus to
   Compel the Director of the Office of General Counsel to hear
   and Rule on Plaintiffs (BP-11) Central Office Administrative
   Remedy Appeal.

6. The Defendant has failed and refuses to fulfill (his/her)
   duties with respect to:
   . CFR 542.11-15; Administrative Remedy Program
   . BOP PS 1330.13; Administrative Remedy Program
   . BOP PS 3420.09; Employee conduct

7. The Appeal contends with the Regional Office refusal to act,
   or perform their duty in degradation to the above mentioned
   codes and rules,as well as the Office of General Counsel.

RECEIVED

MAR 0 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

8.  The befor mentioned Appeal has always been filed by the Plaintiff in complete complience with these Codes and Rules, Plaintiff has provided a copy of said Rules with each filing.

9.  The Plaintiff has exhausted all other forms of Administrative Remedy. The only other course of action besides Writ of Mandamus is a Federal Civil Action.

10. The lack of action by the Defendant has resulted in the continued Harassment and Retaliatory actions of the local BOP staff against the Plaintiff,which puts theHEALTH, SAFTEY and WELFARE of the Plaintiff in Question.

11. The Defendant,in (his/her) role as Director for the Office of General Counsel is charged with the Duty of carrying out,  the Reviewing and Ruling on (BP-11)s,Central Office Administrative Remedy Appeal/Complaint.

12. The Plaintiff has been injured by the Defendant in that the Defendant has failed to perform their duty;and act without malice and disregard to the Plaintiff and the Plaintiffs welfare.

13. The Plaintiff desires that the Defendant fulfill (his/her) duty of reviewing and ruling on the entire (BP-11) Appeal/ Complaint without predjudice.

14. There is a high probability that the Plaintiff will prevail on the merits of this action,as well as the actions established in the Code of Federal Regulations and the Bureau of Prisons Program Statements.

15. Plaintiff will suffer Irreparable injury if the Defendant is not compelled to preform (his/her) clear legal duty.

## PRAYER

16. Plaintiff prays that this Court render and enter a Judgment.

_Edward J Beach_
EDWARD J. BEACH
FED REG NO:19340-058
F.C.I. Williamsburg
P.O. BOX 340
cc:File                                    Salters,SC 29590

Prepared by: EDWARD J. BEACH                    DATE: _O 2-27-2007_

# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

### UNSWORN DECLARATION
### UNDER PENALTY OF PERJURY
### (28 U.S.C. 1746)

    I EDWARD J. BEACH, certify under penalty of perjury that the
foregoing; Writ of Mandamus,Action to compel an Officer of the
United States to preform his duty,In Forma Pauperis Affidavit and
(BP-10) Regional Administrative Remedy Appeal and (BP-11) Central
Office Administrative Remedy Appeal and ther supporting EXIBITS
and Documents are True and Correct.

                                        _Edward Beach_
                                        EDWARD J. BEACH


cc:File

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JANUARY 11, 2007

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : EDWARD JOHN BEACH, 19340-058
      WILLIAMSBURG FCI    UNT: UNIT 1    QTR: A02-227L
      P.O. BOX 220
      SALTERS, SC 29590


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 433282-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED  : JANUARY 8, 2007
SUBJECT 1      : DHO APPEAL - COMBINED (PROCEDURES, EVIDENCE & SANCTIONS)
SUBJECT 2      :
INCIDENT RPT NO: 1523781

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION,  REGIONAL OFFICE, OR  CENTRAL
                 OFFICE LEVEL.

REJECT REASON 2: SEE REMARKS.

REMARKS        : RECORDS INDICATE YOU HAVE NOT COMPLETED THE APPEAL
                 PROCESS AT THE REGION.  COMPLETE THE APPEAL PROCESS
                 AT THE REGION BEFORE APPEALING TO THIS LEVEL.

*Given to inmate on 1-17-07.*

*P. Lowella, Counselor*

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: __Beach, Edward J__    __03?8-058__    __1A__    __FCI Williamsburg__
       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

This is an appeal of the Rejection Notice of my DHO Appeal. The Regional office has rejected my BP-10 (DHO Appeal) TWO times, making unjustifiable and untrue claims of inproper filing (THEREFORE DENING ME ADMINISTRATIVE REMEDY PROCESS).

This has been done to continue to cover up the local BOPs staffs intentional violation of BOPs policies and staff misconduct, Regionals claims are not true, and in DIRECT DEGRADATION to the CODE OF FEDERAL REGULATION and the BOPs Program statement regarding the DHO Appellate procedure - P.S. 1330-13 (9)(b)(3).

Infact the second rejection notice was received and rejected the same day, Therefore, it was never properly read or reveiwed. This shows that the integrity of the Administrative Remedy Process is in Question.

It is clear and Quite Apparent that the BP-10(DHO Appeal) was filed properly and in accordance with BOP P.S. 1330.13 (9)(b)(3). 1EA BP-10, 10EA EXHIBITs.

The Regional Administrative Remedy Coordinator is knowingly and intentionally attempting to cover up, FCI Williamsburgs staffs, Gross misconduct and therefore,committing many violations of BOP P.S. 3420.09(STANDARDS OF EMPLOYEE CONDUCT) themselfs.

__Jan,03,2007__      (Continued on next page)   __Edward Beach__
     DATE                                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

**RECEIVED**

JAN  8 2007

Administrative Remedy Section
Federal Bureau of Prisons

_____                  GENERAL COUNSEL
    DATE

FIRST COPY: WASHINGTON FILE COPY        CASE NUMBER: _____

**Part C - RECEIPT**

                                     CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____                     
    DATE                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)
JUNE 2002

USP LVN

(Continuation of BP-11)

PLEASE REVEIW MY APPEAL, as I was unjustly and unfairly charged and sanctioned. I have been charged and sanctioned to cover up the staffs Gross Misconduct and their sexual-Harassment and their Dehumanizing sex Games.
(AS I WAS NEVER GIVEN AN OPPORTUNITY TO COMPLY WITH BOP P.S. 6060.08 Attatchment (A).

(REQUESTED REMEDY)

* Charges and sanctions overturned.
* All staff retrained.
* All staff involved receive written repremand for their involvement and cover up.
* Back Pay for lost wages,  due to the unjust charges.(from OCT,15,2006  to present).


DATE: Jan,03,2007                          Edward J Beach
                                           Beach,Edward J

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: DECEMBER 14, 2006


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : EDWARD JOHN BEACH, 19340-058
      WILLIAMSBURG FCI      UNT: UNIT 1      QTR: A02-227L
      P.O. BOX 220
      SALTERS,  SC 29590


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 433282-R3        REGIONAL APPEAL
DATE RECEIVED  : DECEMBER 14, 2006
SUBJECT 1      : DHO APPEAL - COMBINED (PROCEDURES, EVIDENCE & SANCTIONS)
SUBJECT 2      :
INCIDENT RPT NO: 1523781

REJECT REASON 1: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER.  TEXT ON ONE SIDE.  THE
                 TEXT MUST BE LEGIBLE.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REJECT REASON 3: SEE REMARKS.

REMARKS        : ALL REASONS FOR APPEAL SHOULD BE LISTED IN THE SPACE
                 PROVIDED ON THE BP-10 FORM AND CONTINUED ON ONE
                 LETTER-SIZE CONTINUATION PAGE. EXHIBITS=DOCUMENTS


*This Remedy was Received and delivered to*
*inmate Beach on 12-28-2006.*

*T. Lowells, Counselor*

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Beach, Edward J_____ __19340-058__ __1A-L__ __FCI Williamsburg__
      LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

**Part A - REASON FOR APPEAL**

    Appeal request for Incident Report and DHO Hearing, as the Incident Report and DHO Hearing are untruthful and unjust and are being used to cover up the sexual misconduct and inappropriate conduct of the staff.

    I have been denied the chance or opportunity to provide a urine sample in accordence with B.O.P. Program Statement 6060.08 and Attachemnet A without being attacked and threatened with intimidation and the sexual misconduct and attacks by the B.O.P. staff.

EXHIBIT'S ATTACHED

EXHIBIT No. 1 Rejection Notice
          No. 2 28 USC 1746: Unsworn declaration, under penalty of perjury.
          No. 3 History and Facts
          No. 4 Incident Report
          No. 5 DHO Report
          No. 6 BOP P.S. 6060.08 page 4     No. 8 BoP PS6060.08 page 8     No. 10 BoP PS 3420a
          No. 7 " " page 5     No. 9 Attachment A .08 page 1     Standards of Employee Conduct

DELIVERED TO MAIL ROOM OFFICER DECEMBER _____, 2006

__Dec 8, 2006_____                __Edward J Beach_____
     DATE                                                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**



_____                        _____
     DATE                                            REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                  CASE NUMBER: _____

**Part C - RECEIPT**

                                                  CASE NUMBER: _____

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____                        _____
     DATE                                    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN             PRINTED ON RECYCLED PAPER                                  BP-230(13)
                                                               JUNE 2002

P.S. 1330.13
December 22, 1995
Page 9

RECEIVED

REGIONAL COUNSEL'S-SERO
BUREAU OF PRISONS

    In many cases, courts require a proper Appeal to the General
Counsel before an inmate may pursue the complaint in court.

[b. **Form**

    (1)  Appeals to the Regional Director shall be submitted on
the form designed for regional Appeals (BP-10) and accompanied by
one complete copy or duplicate original of the institution
Request and response.  Appeals to the General Counsel shall be
submitted on the form designed for Central Office Appeals (BP-11)
and accompanied by one complete copy or duplicate original of the
institution and regional filings and their responses.  Appeals
shall state specifically the reason for appeal.

    (2)  An inmate may not raise in an Appeal issues not raised
in the lower level filings.  An inmate may not combine Appeals of
separate lower level responses (different case numbers) into a
single Appeal.

    (3)  An inmate shall complete the appropriate form with all
requested identifying information and shall state the reasons for
the Appeal in the space provided on the form.  If more space is
needed, the inmate may use up to one letter-size (8 1/2" x 11")
continuation page.  The inmate shall provide two additional
copies of any continuation page and exhibits with the regional
Appeal, and three additional copies with an Appeal to the Central
Office (the inmate is also to provide copies of exhibits used at
the prior level(s) of appeal).  The inmate shall date and sign
the Appeal and mail it to the appropriate Regional Director, if a
Regional Appeal, or to the National Inmate Appeals Administrator,
Office of General Counsel, if a Central Office Appeal (see 28 CFR
part 503 for addresses of the Central Office and Regional
Offices).]

*Clearly STATes Exhibits Seporotely*

    c.  Processing.  The appropriate regional office to process the
Appeal is the regional office for the institution where the
inmate is confined at the time of mailing the Appeal, regardless
of the institution that responded to the institution filing.

10.  [ASSISTANCE §542.16

    a.  An inmate may obtain assistance from another inmate or from
institution staff in preparing a Request or an Appeal.  An inmate
may also obtain assistance from outside sources, such as family
members or attorneys.  However, no person may submit a Request or
Appeal on the inmate's behalf, and obtaining assistance will not
be considered a valid reason for exceeding a time limit for
submission unless the delay was caused by staff.

    b.  Wardens shall ensure that assistance is available for
inmates who are illiterate, disabled, or who are not functionally
literate in English.  Such assistance includes provision of
reasonable accommodation in order for an inmate with a disability
to prepare and process a Request or an Appeal.]

EXIBIT No. 1

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 22, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : EDWARD JOHN BEACH, 19340-058
      WILLIAMSBURG FCI    UNT: UNIT 1    QTR: Z03-147LDS
      P.O. BOX 220
      SALTERS,  SC 29590

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 433282-R2      REGIONAL APPEAL
DATE RECEIVED  : NOVEMBER 9, 2006
SUBJECT 1      : DHO APPEAL - COMBINED (PROCEDURES, EVIDENCE & SANCTIONS)
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER.  TEXT ON ONE SIDE.  THE
                 TEXT MUST BE LEGIBLE.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.

Received And delivered to the inmate on 12-6-06

T. Lowell, Counselor

EXHIBIT No. 2

I Edward J. Beach declare (or certify, verify, or state) under penalty of perjury that the, DHO Appeal and it's Exhibit's are true and correct to the best of my knowledge.

Executed　on　(_DEC 8, 2006___)

Edward J. Beach
Reg. # 19340-058

EXHIBIT No. 3

HISTORY OF FACTS

1.    On Sunday October 15, 2006, I was written up on a incident report (see Exhibit No. 4) which was not only untruthful, It was unjustified and unfair.

2.    The staff has failed to properly read and comprehend and follow B.O.P. P.S. 6060.08 and Attachment A Urine Surveillance. As well as B.O.P. P.S. 3420.09 Standards of Employee Conduct.

3.    The Williamsburg staff has intentionally failed to investigate my complaints against staff for sexual harassment, sexual misconduct and verbal assualt.

4.    The staff has over looked and ignored Officer Woods and other staff misconduct towards Inmates, rather than taking corrective actions. This is in direct degration to B.O.P. P.S. 3420.09 Standards of Employee Conduct.

5.    Both Incident Report and DHO Report do not truthfully discribe the events that took place.

6.    Upon my arrival at the Lt. Office I observed a Inmate being searched and escorted into a room by a Officer for a urine sample.

7.    As all other times that have given urine samples the staff generally put their foot in the door so that they may observe and insure the sink are toilet are not used to alter the sample.

8.    As the Inmates are required to wash their hands and be searched prior to this, it insure a non contaminated sample.

9.    As I cannot urinate with someone watching; I then asked the officer standing there if the officer that went into the room with the Inmate was just observing or actually watching the mans penis.

10.   I told the officer that could not urinate in front with other's watching. And that I was not a homosexual and did not feel comfrotable with or believe in exposing myself to others  especially a man.

- 1 -

<u>EXHIBIT No. 3</u>

11.   The officer than told me to go to the office and talk to the officer there.

12.   I went to the office and reported to the officer.

13.   The officer asked me "what is your problem" being very nasty. I than tried to explain that I had a problem with exposing myself and urinating in front of others.

14.   I told the officer that I was not a homosexual and would not pull my dick out in front of another man, That it was not only degrading but that it was morally and ethiclly wrong .

15.   I told the officer that I was more than willing to provide a urine sample and/or take any other type of Drug Test.

16.   I asked if the officer could or would stand behind me or to the side to supervise the test.

17.   The officer said (very nasty like) No we are going to look at your dick.

18.   This is clearly an untrue, unjustified and uncalled for statement. When referring to B.O.P. P.S. 6060.08 Attachment  A page 1, Item 4.

19. "Bottles will be kept under direct staff observation and control at all times, BOTH <u>BEFORE</u> AND <u>AFTER</u> the Inmate furnsihes the sample."

20.   NOTE: <u>NOT DURING</u> - BUT - <u>BEFORE</u> AND <u>AFTER</u> the Inmate furnishes the sample. This is clearly stated.

21.   I agian told the officer "I am not a homosexual and I don't pull my dick out in front of another man and I cannot urinate in front of them" and to do so was not only degrading it was morally and ethiclly wrong.

22.   I again asked if I could provideu a urine sample or participate in a non degrading way.

23.   The officer then said "If you do not show your dick you are going to the SHU"

- 2 -

EXHIBIT No. 3

HISTORY AND FACTS

24.    I was then escorted to the SHU.

25.    In the SHU I was told the (LT.) wanted to see me. When I saw the officer he did not indentify himself; He read the Incident Report to me and asked if I had anything to say.

26.    I then explained all that had happened and again outlined that (I was not given an opportunity to give a urine sample) - In accordence with the B.O.P. Program Statement.

27.    I also told the officer about the sexual misconduct and threats made by Mr. Woods and requested a investigation.

28.    The (Lt.) stated that he did not want to talk Lawyer talk with me. (and that was all)

29.    I again asked for an investigation because I felt that I had been sexually assualted verbally as the officer tried to determinize, degrade and humiliat me into do somthing wrong, morally and ethiclly (all of this is not called for in B.O.P. 6060.08)

30.    NOTE: If I or any other Inmate exposes themself to others, We automatically get charged with a sex offense or sexual misconduct. (this should be no differnet)

31.    No place in the B.O.P. P.S. 6060.08 or in its attachments is there instructions for staff to act or do anything like what the officers was doing or demanding me to do.

32.    Ref: see exhibit No. 6, 9. B.O.P. P.S. 6060.08 page 4, Item 9 B.O.P. P.S. 6060.08 Attachment A, page 1, and 2, Item 2, and 4

33.    B.O.P. P.S. 6060.08 Item 9, Clearly states: Inmate shall be directly supervised during this two-hour period.

34.    Not watch Inmates penis for a two-hour period.

35.    The staff cannot truthfully or competently say: watching a mans penis is for the (safety and security of the institution) unless they are a very disturbed and sick person; see:(Exhibit No. 6)

EXHIBIT No. 3

HISTORY AND FACTS

36.   1. B.O.P. P.S. 6060.08 page <u>4</u>, Item No. <u>9</u>, page <u>3</u>
      offers alternatives of a secure, dry room.
      (for these that cannot urinate in front of others) (Exhibit No. 6)

37.   2. B.O.P.  Attachment <u>a</u>, Item No. <u>2</u> states: Inmate will be thoroughly
searched and wash their hands prior to the giving of the sample.(Exhibit No. 9)

38.   (This is to prevent any tampering or diluting of sample)

39.   3. BOP P.S. 6060.08 Attachment A. Item No. <u>4</u>, states: Bottles will be
kept under direct staff observation and control at all times. BOTH <u>BEFORE</u> AND
<u>AFTER</u> the inmate furnishes the urine sample.

40.   NOTE: <u>NOT</u> <u>DURING</u> the furnishing or giving of the sample, <u>BEFORE</u> and <u>AFTER</u>

41.   Therefore no place is it called for - for a inmate to directly expose
themself to others while providing a urine sample.

42.   ? SAFETY and SECURITY of the institution?

43.   The excuse of (safety and security of the institution) to <u>force</u> or <u>intimidate</u>
a inmate into exposing themself is not only obserd, it is untruthful. It is
a cover-up for the staff intentional and malisious sexual harassment and sexual
misconduct in there attempt to humiliat and degrade the Inmate.

44.   Safety and Security is the excuse that is used when the staff have no
competent or reasonable answer for something.

45.   Safety and Security <u>is</u> and can be maintained with out the intentional,
humiliation and degrading acts being forced upon the Inmate for no justifiable
reason. Just following what is written in B.O.P. P.S. 6060.08 and Attachment
<u>A</u> <u>as</u> <u>it</u> <u>is</u> <u>written</u>.

46.   If a Inmate exposes themselfs anywhere or any time, they are immediately
charged with a sexual offense or sex crime.

47.   Therefore why should a officer be able to or allowed to intimidate, threaten
and degrade (sexually) a Inmate into exposing themself for no valid reason,
But to show and excersize power and authority in front of his peers.

- 4 -

EXHIBIT No. 3

HISTORY AND FACTS

48.    When I saw my team before the DHO hearing I explained the situation to them. I was told that it did not matter what happened I was going to be found guilty.

49.    At the DHO Hearing, the DHO officer told me that I was not creditable because I was a Inmate.

50.    Basiclly I was found guilty before I even had a hearing.

51.    This has, in no way been a just, fair, truthfully, unbyest process.

52.    I submit that I was wrongfully and unjustly found guilty for something, when I should not have been.

53. 1.I never refused to provide a urine sample or submit to a drug test of any kind.

54. 2.I was never given the opportunity to provide a urine sample in accordence with B.O.P. P.S. 6060.08 and its attachments. (AS I CANNOT URINATE IN FRONT OF OTHERS)

55. 3.The officer's were knowingly and willingly trying to degrade and humiliate me with his sexual misconduct, sexual harassment into the act of exposing myself, just to show or flount his authority or power over Inmates.

56.    If I am to give a urine sample every 30 days; and I cannot or am unable to urinate in front of others. Am I to stay locked up in the SHU (hole) and forfeit all of my privliges for the rest of my sentence 11½ years.

57.    And why is a system written to provide for this situation, (people not being able to urinate in front of others) but not used.

58.    NOTE: On the morning of November 5, 2006, I was called for a urine sample. The officer stayed behind me and I was able to give the sample. Why Could Not the officer have done this before and not verbally sexually assualt me.

- 5 -

MAY 1994

*EXIBIT NO. 4*

U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

1. Name Of Institution:

Part I - Incident Report

| 2. Name Of Inmate | 3. Register Number | 4. Date Of Incident | 5. Time |
|---|---|---|---|
| Beach, Edward | 19340-058 | 10-15-06 | 8:15 am |

| 6. Place Of Incident | 7. Assignment | 8. Unit | |
|---|---|---|---|
| Lieutenant Office | Unit AA orderly | 1A-Lower | |

9. Incident 110: Refusing to provide a urine sample or to take part in other drug - abuse testing.

11. Description Of Incident Date: 10-15-06 Time: 8:15AM

On the date and time above Inmate Beach, Edward register #19340-058 was asked to provide a urine sample. Inmate Beach refused, and I instructed Inmate Beach that I was giving him a direct order to provide a urine sample, and he refused. Inmate Beach stated " I am not a homosexual, and I am not going to show a man my dick." Operations Lieutenant was notified, and Inmate was escorted to Special housing without incident.

| 12. Signature Of Reporting Employee | Date And Time 10-15-06 8:55AM | 13. Name And Title (Printed) J. Woods, Senior Officer |
|---|---|---|

| 14. Incident Report Delivered To Above Inmate By | 15. Date Incident Report Delivered 10-15-06 | 16.time Incident Report Delivered 10 ⁰⁰ |
|---|---|---|

Part II - Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident

| 18. A. It Is The Finding Of The Committee That You: _____ Committed The Following Prohibited Act. _____ Did Not Commit A Prohibited Act. | B. _____ The Committee Is Referring The Charge(s) To The DHO For Further Hearing. C. _____ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within 15 Calendar Days. |
|---|---|

19. Committee Decision Is Based On The Following Information

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

EXIBIT No. 3

"Inmate"

# DISCIPLINE HEARING OFFICER REPORT
## U.S. DEPARTMENT OF JUSTICE

BP-S305.052 MAY 94
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | F.C.I. Williamsburg | INCIDENT REPORT NUMBER | | 1523781 | |
|---|---|---|---|---|---|
| INMATE NAME | BEACH, Edward | REG NO | 19340-058 | UNIT | 1A Lower |
| DATE OF INCIDENT | 10/15/06 | DATE OF INCIDENT REPORT | | 10/15/06 | |
| OFFENSE CODE (S) | 110 | | | | |

| SUMMARY OF CHARGES | Refusing to Provide a Urine Sample. |
|---|---|

## I  NOTICE OF CHARGE (S)

A.  Advanced written notice of charge(copy of Incident Report) was given to the inmate on 10/15/06 at 10:00 a.m., by J. Stivers, Lieutenant.

B.  The DHO Hearing was held on 10/18/06 at 12:45 p.m.

C.  The inmate was advised of his/her rights before the DHO by (staff member): P. Powells, Counselor, on 10/18/06 and a copy of the advisement of rights form is attached.

## II  STAFF REPRESENTATIVE

| A. | Inmate waived right to staff representative | | Yes | X | | No | |
|---|---|---|---|---|---|---|---|

B.  Inmate requested staff representative and   N/A   appeared.

C.  Requested staff representative declined or could not appear, but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: N/A

| D. | Staff representative | N/A | | was appointed. |
|---|---|---|---|---|

E.  Staff representative statement:  N/A

## III  PRESENTATION OF EVIDENCE

| A. | Inmate admits | | denies | X | neither | | the charges. |
|---|---|---|---|---|---|---|---|

B.  Summary of inmate statement: "I didn't refuse to participate in any drug test.  The guard was trying to humiliate me when I asked him about procedures.  This individual was flippant and disrespectful."  You stated you asked the officer if he was observing you so you would not contaminate the specimen or if he was watching your dick.

| 1. | The inmate requested witness (es) | Yes | | | No | X |
|---|---|---|---|---|---|---|

| 2. | The following persons were called as witnesses at this hearing and appeared (include each witnesses' name, title, reg. number and statement as appropriate):  N/A |
|---|---|

| 3. | The following persons requested were not called for the reason (s) given:  N/A |
|---|---|

| 4. | Unavailable witnesses were requested to submit written statements | Yes | | No | | N/A | X |
|---|---|---|---|---|---|---|---|

C.  Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents: N/A.

D.  Confidential information was used by the DHO in support of his findings, but was not revealed to the inmate.  The confidential information was documented in a separate report.  The confidential information has been (confidential informants have been) determined to be reliable because: N/A

**DISCIPLINE HEARING OFFICER REPORT**                                    BP-S305.052 MAY 94
**U.S. DEPARTMENT OF JUSTICE**                                          **FEDERAL BUREAU OF PRISONS**

| IV | FINDINGS OF THE DHO | | |
|----|---|---|---|
| X | A. | The act was committed as charged. | |

| V | SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (physical evidence, observations, written documents, etc.) |
|---|---|

Your due process rights were read and reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present, and requested no witnesses or a staff representative to appear on your behalf.

The DHO finds you committed the prohibited act of Refusing to Provide a Urine Sample, code 110, when you refused to provide a urine sample.

The DHO bases this finding on the written statement of the reporting officer that on October 15, 2006, at 8:15 a.m., he asked you to provide a urine sample. However, you refused. The officer gave you another opportunity to provide a urine sample by giving you a direct order. Again, you refused stating, "I am not a homosexual and I am not going to show a man my dick."

The DHO considered your statement that the guard was trying to humiliate you when you asked him about the procedures. However, when you are requested to submit to a urinalysis, it is imperative the officer watch you thoroughly to prevent you from tampering with the specimen. You were aware of this fact as you stated this to the officer during the incident per your statement during the hearing. Although this procedure is not comfortable if you are not accustomed to it, it is imperative for the institution to monitor and control the introduction and ingestion of narcotics and alcohol. You refused to partake in this procedure due to personal reasons, violating a vital policy and are therefore being held accountable.

Based on the reporting officer's statement, and your statements during the hearing, the DHO finds you did commit the prohibited act of Refusing to Provide a Urine Sample, code 110.

| VI | SANCTION OR ACTION TAKEN | | | | | | |
|----|---|---|---|---|---|---|---|
| Disciplinary Segregation | | No. of Days | 45 | Suspended | Y/N | No. Days | |
| Disallowance of Good Conduct Time | | No. of Days | 40 | Suspended | Y/N | No. Days | |
| Loss of Visiting Privileges | | No. of Days | 180 | Suspended | Y/N | No. Days | |
| Visiting With Immediate Family Only | | No. of Days | 180 | Suspended | Y/N | No. Days | |

| VII | REASON FOR SANCTION OR ACTION TAKEN |
|---|---|

Refusing to Provide a Urine Sample will not be tolerated in the correctional environment. This behavior inhibits staff's ability to curtail drug usage in the institution and ultimately jeopardizes the safety of both staff and inmates. The sanction 45 days disciplinary segregation is imposed as punishment. The sanction of 180 days loss of visiting followed by 180 days visiting with immediate family is imposed as drugs most often are introduced into the institution through visiting. The sanction of disallowance of 40 days GCT was imposed which is compliant for an inmate sentenced under PLRA guidelines and should serve as a constant reminder that your continued inappropriate conduct will prolong your incarceration.

The sanctions were imposed to hold you accountable for your behavior in this instance, and will hopefully deter you from future conduct of this sort. If not, I caution you that the Bureau of Prisons believes in, and practices, progressive discipline and repetitive behavior of this sort will likely result in harsher consequences.

| VIII | APPEAL RIGHTS:  The inmate has been advised of the findings, specific evidence relied on, action, and reasons for the action.  The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure.  A copy of this report has been given to the inmate. | | | | | |
|---|---|---|---|---|---|---|
| | | | Yes | X | | No | |

*EXIBIT No. 5*

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

BP-S305.052 MAY 94
**FEDERAL BUREAU OF PRISONS**

| IX    DISCIPLINE HEARING OFFICER | | |
|---|---|---|
| Printed Name | Signature | Date |
| J. ComStock | *[signature]* | October 23, 2006 |
| Delivered to Inmate By: | D. Marcell | Date  10/25/06 |

Sensitive - But Unclassified
Page 3 of 3

*EXIBIT NO, 6*

PS 6060.08
11/24/99
Page 4

● **Refusing to Provide a Urine Sample, Code 110;**
● **Introduction of Drugs or Drug Paraphernalia, Code 111;**
● **Use of Drugs or Related Paraphernalia, Code 112; or**
● **Possession of Drugs or Related Paraphernalia, Code 113.**

9. **[PROCEDURES §550.31** ⟶ 28CFR 550.31**]**

a. **Staff of the same sex as the inmate tested shall directly supervise the giving of the urine sample. If an inmate is unwilling to provide a urine sample within two hours of a request for it, staff must file an incident report. No waiting period or extra time need be allowed for an inmate who directly and specifically refuses to provide a urine sample. To eliminate the possibility of diluted or adulterated samples, staff shall keep the inmate under direct visual supervision during this two-hour period, or until a complete sample is furnished. To assist the inmate in giving the sample, staff shall offer the inmate eight ounces of water at the beginning of the two-hour time period. An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. An inmate may rebut this presumption during the disciplinary process.]**

Ordinarily, an inmate is expected to provide a urine sample within two hours of the request, but the Captain (or Lieutenant) may extend the time if warranted by specific situations (for example, the inmate has a documented medical or psychological problem, is dehydrated, etc.).

Staff may consider supervising indirectly an inmate who claims to be willing but unable to provide a urine sample under direct visual supervision. For example, this might be accomplished by

*EXIBIT No. 7*

allowing the inmate to provide the sample in a secure, dry room after a thorough search has been made of both the inmate and the room.

A urine sample is considered to be approximately a full specimen bottle. **Refer to Standard Procedures for Collecting Urine Surveillance Samples (Attachment A).**

[b. Institution staff shall determine whether a justifiable reason exists, (e.g., use of prescribed medication) for any positive urine test result. If the inmate's urine test shows a positive test result for the presence of drugs which cannot be justified, staff shall file an incident report.]

In addition to checking whether the inmate's positive urinalysis result may be justified by prescribed medication, staff must ensure that the minimum waiting period for successive positive results is taken into account, as guided by the Detection Periods for Selected Drugs (Attachment B).

- Those time periods are estimates of the maximum time urine would test positive for a particular drug. For example, ordinarily, at least 30 days would have to elapse between urine collections before disciplinary action could be taken for a second positive THC result; however, urine could be collected from that inmate within those 30 days, and an incident report could be based on positive results for a drug other than THC.

Incident reports pertaining to positive urine tests will be forwarded to the Unit Discipline Committee, in accordance with the Program Statement on Inmate Discipline and Special Housing Units.

An inmate who has been found to have committed any of the following prohibited acts will be tested monthly for the following 24 months:

- **Refusing to Provide a Urine Sample, Code 110;**
- **Introduction of Drugs or Drug Paraphernalia, Code 111;**
- **Use of Drugs or Related Paraphernalia, Code 112; or**
- **Possession of Drugs or Related Paraphernalia, 113.**

After being tested for a period of 24 consecutive months and no further discipline actions taken for drug related offenses, the inmate will be removed from the Prior Act List; however, acts of misconduct (Codes 110, 111, 112, or 113) while on the Prior Act List requires continuance on the Prior Act List for an additional 24 months from the date of the new discipline action.

c. **Urine Sample Screening and Confirmation.** Urinalysis will be performed exclusively by a Central Office-approved laboratory.

The urinalysis contractor will detect and identify at least the following drugs and/or metabolites by basic screen at the minimal levels stated in the contract:

*EXIBIT No. 8*

PS 6060.08
CN-1 3/8/2001
Page 8

\*    Inmates will then be sequentially chosen from the remaining names on the **Random** list to replace those unavailable for testing in order to continue testing from the list. **Any unavailable inmate who is bypassed should be tested when it is more convenient for staff and the inmate is available.**    \*

(2) **Fairness and randomness are necessary in using the list.** No listed inmate may be excused if he or she is available to provide a urine sample. If even one inmate is excused, the selection process is no longer random.

(3) While the random list is to be produced on a regularly scheduled basis, it is not necessary to actually collect the samples in that same calendar month. For example, a list produced one month might be used through the 15th of the following month.

(4) Sample collection will not follow any pattern that inmates could predict. Samples will be taken at different hours (early morning, noon, late evening). Collection will be spread evenly over seven days a week during the course of a month whenever practicable.

**11. NARCOTIC IDENTIFICATION KITS.** Each Captain will ensure the institution maintains a supply of Narcotic Identification Kits (purchased through the Federal Supply Schedule) to determine the identity of unknown substances.

All lieutenants will be proficient in using the Narcotic Identification Kit and ordinarily are responsible for testing unknown substances.

While identification of such substances may be useful for various security purposes, it is often particularly important in the investigation of incident reports and may be important in referring incidents to the Federal Bureau of Investigation.

**12. FEDERAL HIGHWAY ADMINISTRATION (FHWA) TESTING.** Inmates assigned to drive a vehicle requiring a commercial driver's license are also subject to alcohol testing under FHWA guidelines.

Refer to the Correctional Services Manual and Special Investigative Supervisors Manual for further information.

/s/
**Kathleen Hawk Sawyer**
**Director**    *Attachment A*

**STANDARD PROCEDURES FOR COLLECTING URINE SURVEILLANCE SAMPLES**

1.    To the extent possible, urine samples should be collected in one or two centralized

11/24/99

areas of the institution, ( e.g., lieutenants' office or R & D), by staff who are *Attachment A,* thoroughly familiar with the procedures specified below. *PAGe 1*

2. Inmates will be thoroughly searched to detect any device designed to provide a urine substitute or possible contaminant and will thoroughly wash their hands prior to providing the sample.

3. When the inmate reports for testing staff will:

   - make a positive picture identification of the inmate;
   - collect the sample from the inmate;
   - assign the sample a urine sample identification number;
   - label the urine bottle with that number and the date and;
   - record the number next to the inmate's name on the lab slip.



4. Bottles will be kept under direct staff observation and control at all times, both before and after the inmate furnishes the urine sample.

5. Ordinarily, to be submitted for testing, bottles will be full (i.e., 60cc or 2 oz). Once a sufficient sample is provided, staff must ensure that the urine sample identification number on the bottle corresponds to the number assigned to that inmate on the lab slip. Staff must then sign the laboratory form certifying that the specimen identified on the laboratory form is the specimen presented to staff by the inmate providing the certification on the form, bears the same identification number as the specimen, and has been labeled and sealed according to the collection procedures stipulated above.

6. The inmate will then certify by signing the laboratory form that the specimen provided to the collection officer was provided by the inmate, sealed in the inmate's presence, and the information on the form and label is correct. If the inmate refuses, a second staff member must make this verification and sign the form.

*EXIBIT No. 10*

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE AFFECTED:** 3420.09
**CHANGE NOTICE NUMBER:** 3420.09
**DATE:** 2/5/99

1. <u>PURPOSE AND SCOPE</u>.  To revise the Standards of Employee Conduct.

2. <u>SUMMARY OF CHANGES</u>.  The changes include expanding the time frames for personal use of government property as well as removing some limitations on outside employment.

The change in Attachment A modifies the definition of "reckoning period" to conform with the Department of Justice Order pertaining to disciplinary and adverse actions and added an addition offense (#54), "Failure to report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report."

Additionally, the Request for Outside Employment forms have been removed as attachments.  These forms may now be located in the forms area of BOPDOCS.

There are also various formatting changes, including conversion to WordPerfect 6.1, which caused some pagination changes.  The sections changed are marked by asterisks.  These changes can be found on pages 5, 6, 8, 15, 18, and 19.

3. <u>ACTION</u>.  All Wardens shall ensure each employee receives and signs for receipt of the revised pages.

File this Change Notice in front of the Program Statement on Standards of Employee Conduct.

/s/
Kathleen Hawk Sawyer
Director

*EXIBIT NO. 10*



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** OGC
**NUMBER:** 3420.09
**DATE:** 2/5/99
**SUBJECT:** Standards of Employee Conduct

1.  <u>PURPOSE AND SCOPE</u>.  To provide policies and procedures, herein referred to as the "Standards of Conduct," to complement those issued by the Office of Government Ethics on:

- employee conduct and responsibility,
- ethics in matters involving conflicts of interest,
- post-employment restrictions,
- procurement integrity issues,
- attorney ethics, and
- outside employment.

These standards apply to all employees of the Bureau of Prisons (Bureau), including employees of the Public Health Service and the National Institute of Corrections, and to any person detailed to any of those agencies under the Intergovernmental Personnel Act.  Such employees are subject to certain standards and prohibitions -- some statutory, some regulatory, and some a matter of good ethical and moral practice that is essential to the efficiency of the organization.  Contractors and volunteers working in Bureau facilities also are expected to conduct themselves by these standards.  This policy will not override the Master Agreement.

While issuances from the Office of Government Ethics and the Department of Justice address the basic standards and prohibitions applicable to Bureau employees, this Program Statement more specifically addresses situations that are especially applicable to Bureau employment.  It does not and cannot, however, attempt to detail every incident which could violate the Standards of Conduct.

*EXIBIT No.10*

2.  <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

   a.  Employees will conduct themselves in a manner that creates and maintains respect for the Bureau of Prisons, the Department of Justice, and the U.S. Government.

   b.  Employees will avoid situations which involve conflicts of interest with their employment.

   c.  Employees will comply with restrictions on employment outside the Bureau and after employment with the Bureau.

   d.  Employees will conform with procurement integrity regulations.

   e.  Employees will uphold the ethical rules governing their professions.

   f. Employees will immediately report any violation, or apparent violation, of standards of conduct to their Chief Executive Officer (CEO) or another appropriate authority.

   g.  Employees who fail to conduct themselves in accordance with these standards will be subject to appropriate sanctions.

3.  <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directive Rescinded</u>

      PS 3420.08        Standards of Employee Conduct and
                        Responsibility  (3/7/96)

   b.  <u>Directives Referenced</u>

      PS 3735.04        Drug Free Workplace Program (6/30/97)
      PS 5510.09        Searching, Detaining, or Arresting Persons
                        Other Than Inmates (3/6/98)
      PS 5840.03        Staff Correspondence About Inmates (3/4/93)

      18 U.S.C. § 201        Bribery; Illegal Gratuities
      18 U.S.C. § 203        Representational Issues
      18 U.S.C. § 205        Representational Issues
      18 U.S.C. § 207        Post-Employment Statute
      18 U.S.C. § 208        Conflict of Interest Statute
      18 U.S.C. § 2241-45    Sexual Abuse
      41 U.S.C. § 423        Procurement Integrity Act

*EXIBIT No. 10*

PS 3420.09
2/5/99
Page 8

reporting for duty, is prohibited.  Employees shall be subject to disciplinary action if found to possess a .02 blood alcohol content level or greater while on duty.

b.  <u>Sexual Relationships/Contact With Inmates</u>.  Employees may not allow themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, former inmates, or the families of inmates or former inmates.  Chaplains, psychologists, and psychiatrists may continue a previously established therapeutic relationship with a former inmate in accordance with their respective codes of professional conduct and responsibility.

(1)  An employee may not engage in, or allow another person to engage in, sexual behavior with an inmate.  Regardless of whether force is used, or threatened, there is never any such thing as "consensual" sex between staff and inmates.

(2)  Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened.  "Sexual contact" is defined as the intentional touching of "the genitalia, anus, groin, breast, inner thigh, or buttocks."  Penetration is not required to support a conviction for sexual contact.  All allegations of sexual abuse shall be thoroughly investigated and, when appropriate, referred to authorities for prosecution.

(3)  Employees are subject to administrative action, up to and including removal, for any inappropriate contact or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime.  Physical contact is not required to subject an employee to sanctions for sexual misconduct.

c.  <u>Additional Conduct Issues</u>.  An employee may not offer or give to an inmate or a former inmate or any member of his or her family, or to any person known to be associated with an inmate or former inmate, any article, favor, or service, which is not authorized in the performance of the employee's duties.  Neither shall an employee accept any gift, personal service, or favor from an inmate or former inmate, or from anyone known to be associated with or related to an inmate or former inmate.  This prohibition includes becoming involved with families or associates of inmates.  If such contact occurs, it must be reported using the procedure in subsection c(5).

(1)  An employee may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another.

*EXIBIT No. 10*

PS 3420.09
2/5/99
Page 9

(2)  An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

(3)  An employee may not use physical violence, threats or intimidation toward fellow employees, family members of employees, or any visitor to a Bureau work site.

(4)  An employee may not use profane, obscene, or otherwise abusive language when communicating with inmates, fellow employees, or others.  Employees shall conduct themselves in a manner which will not be demeaning to inmates, fellow employees, or others.

(5)  An employee who becomes involved in circumstances as described above (or any situation that might give the appearance of improper involvement with inmates or former inmates or the families of inmates or former inmates, including employees whose relatives are inmates or former inmates) must report the contact, in writing, to the CEO as soon as practicable.  This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope of employment.  The employee will then be instructed as to the appropriate course of action.

(6)  Employees shall avoid situations which give rise to a conflict of interest or the appearance of a conflict of interest (see Section 6, Definitions).

(7)  Employees shall not participate in conduct which would lead a reasonable person to question the employee's impartiality (see Section 20, Conflicts of Interest).

10.  RESPONSIVENESS

  a.  Inattention to duty in a correctional environment can result in escapes, assaults, and other incidents.  Therefore, employees are required to remain fully alert and attentive during duty hours.

  b.  Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately and effectively to all emergency situations.

  c.  Employees are to obey the orders of their superiors at all times.  In an emergency situation, carrying out the orders of those in command is imperative to ensure the security of the institution.

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 8. Disorderly conduct, fighting, threatening, or attempting to inflict bodily injury to another, engaging in dangerous horseplay. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 9. Disrespectful conduct, use of insulting, abusive or obscene language to or about others. | Includes verbal abuse of inmates, exinmates, their families or friends. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 10. Reporting for duty or being under the influence of intoxicants or other drugs; unauthorized possession of intoxicants or drugs on government or leased premises. | | Official reprimand to removal. | 14-day suspension to removal. | 30-day suspension to removal. | 2 years. |
| 11. Failure to follow orders during an emergency situation. | Potential danger to safety and/or damage to property is a primary consideration in determining severity of the penalty. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |

EXHIBIT No. 10

PS 3420.09.
2/5/99
Attachment A - Page 10

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 26. Acceptance of any gift or favor from an inmate or former inmate. | Value of gift or favor and the reasons for accepting are primary considerations in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 27. Giving or offering an unauthorized article or favor to any inmate, their families or friends. | Value of article or favor and the reasons for giving are primary considerations in determining the severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 28. Preferential treatment of inmates. | Potential or actual negative reaction of other inmates is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

*EXIBIT NO. 10*

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 29. Improper relationship with inmates, former inmates, their families or friends. | Degree of involvement is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 30. Aiding or abetting inmate violation or attempted violation of any law, rule, regulation or commission of any prohibited act. | Degree of aid and seriousness of violation is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 31. Failure to report to management any violation or attempted violation of unprofessional contacts with inmates, former inmates, their families or friends. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

*EXIBIT No.40*

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 32. Falsification, misstatement, exaggeration or concealment of material fact in connection with employment, promotion, travel voucher, any record, investigation or other proper proceeding. | Includes, but is not limited to, the destruction of records to conceal facts, and a concealed conflict of interest in the performance of official duties. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 33. Refusal or failure to cooperate in any official U.S. government inquiry or investigation, including a refusal to answer work-related questions or attempting to influence others involved in the inquiry. | Includes administrative or criminal investigation, grievance inquiry, EEO investigation, and any other administrative inquiry. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 34. Refusal to undergo a search of person or property. | | Removal. | Removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 35. Criminal, dishonest, infamous, or notoriously disgraceful conduct. | Includes conduct on or off duty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 36. Conduct which could lead others to question an employee's impartiality. | Includes, but is not limited to, a financial, sexual, or emotional relationship with a subordinate in a supervisor's chain of command. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 37. Discrimination in official action against an employee or applicant because of race, religion, sex, national origin, age, handicapping condition, sexual orientation or any reprisal action taken against an employee for filing a discrimination complaint. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 53. Misconduct off the job. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| * 54. Failure to report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report. | Offense includes failure to report violation of Program Statement, government ethics regulations, EEO laws and criminal laws. In particular, supervisors or managers must report sexual harassment observed by or reported to them. No retaliation can be taken against staff or inmates who report any such violations. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years.* |

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

*EDWARD J. BEACH*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF *88888*
(EXCEPT IN U.S. PLAINTIFF CASES)

*PRO SE (PR)*

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
*# 19340-058*

**DEFENDANTS**

*HARLEY LAPPIN*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

F THE

Case: 1:07-cv-00700
Assigned To : Leon, Richard J.
Assign. Date : 04/17/2007
Description: Beach v. Harley Lappin

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

⊙ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**☐ E. General Civil (Other) OR ⊙ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
⊙ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 1361 - WRIT OF MANDAMUS

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES ◉ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES   ☐ NO   If yes, please complete related case form.

DATE    SIGNATURE OF ATTORNEY OF RECORD    *NCD*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint.  You may select only <u>one</u> category.  You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.


Vforms/js-44.wpd