# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDWARD J. BEACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-700 (RJL) |
| | ) | |
| HARLEY LAPPIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO THE COURT'S APRIL 28, 2007 ORDER AND DEFENDANT'S MOTION TO DISMISS

Defendant, Harley Lappin, Director, Federal Bureau of Prisons (BOP), by and through the undersigned counsel, hereby submits this response to the Court's April 28, 2007 Order and also moves, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), to dismiss this action.

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities and to the entire record in this case. A proposed Order consistent with the relief sought herein is attached.

*Pro se* plaintiff is hereby advised that failure to respond to a dispositive motion may result in the district court granting the motion and dismissing the case. See Fox v. Strickland, 837 F.3d 507, 509 (D.C. Cir. 1988).

Respectfully submitted,

\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

___/s/_____
QUAN K. LUONG, D.C. BAR #
Special Assistant United States Attorney


Of Counsel:

Delaine Martin Hill
Assistant General Counsel
Office of the General Counsel
Litigation Branch
Federal Bureau of Prisons

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDWARD J. BEACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-700 (RJL) |
| | ) |
| HARLEY LAPPIN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANT'S RESPONSE TO THE COURT'S APRIL 28, 2007 ORDER**
**AND IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

On or about April 17, 2007, Plaintiff filed with this Court a Writ of Mandamus seeking to compel the Defendant Harley Lappin, Director, Federal Bureau of Prisons (BOP) "to hear and [r]ule on Plaintiff's (BP-11) Central Office Administrative Remedy Appeal." Compl. at ¶ 5. On or about April 28, 2007, the Court issued an Order directing the Defendant to show cause why the Writ of Mandamus should not be issued.[1] Docket Entry 5.

Defendant hereby submits this response and submits that this Court should find that the Plaintiff is not entitled to the extraordinary relief of mandamus because: (1) Plaintiff does not have a clear right to the relief he seeks; (2) Defendant does not have a clear duty to act in the manner Plaintiff demands; and (3) there are alternative avenues of relief available to Plaintiff which he has not yet pursued.

---

[1] On July 2, 2007, the Court granted the Defendant's motion to enlarge time to respond to the Court's April 28, 2007 order and directed the Defendant's to respond by July 13, 2007. Docket Entry 11.

Defendant respectfully submits that this Court should also dismiss this action because: (1) this Court lacks jurisdiction over this action because Plaintiff has failed to comply with the administrative exhaustion requirements set forth in the BOP's duly promulgated regulations and (2) Plaintiff has failed to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff Edward J. Beach, federal register number 19340-058, is a federal prisoner currently incarcerated in the Federal Correctional Institution Williamsburg ("FCI Williamsburg"), in Salters, South Carolina.  Compl. at Ex 1.  Plaintiff is currently serving a sentence of one hundred eighty eight (188) months for:  (1) conspiracy to manufacture and possess with intent to distribute methamphetamine and (2) manufacturing methamphetamine and aiding and abetting.  See United States v. Beach, 2006 U.S. Dist. LEXIS 57623, *1 (W.D.N.C. 2006); see also United States v. Beach, 196 Fed. Appx. 205, 207 (4th Cir. 2006) (per curiam) (unpublished).

On or around October 15, 2006, Plaintiff was directed to provide a urine sample in accordance with the BOP's Urine Surveillance program.[2]  Compl. Ex. 3, ¶ 1; Ex. 4.  Plaintiff contends that he told the BOP officer that he was not able to urinate with another person watching him.  Compl. Ex. 3, ¶¶ 9-10.  Plaintiff told the officer "that I was not a homosexual and would not pull my dick out in front of another man."  Id. at ¶14.  However, the BOP officer explained to the Plaintiff that he had to be observed while providing the urine sample and again directed the Plaintiff to provide a sample.  Compl. Ex. 4.  When Plaintiff again refused to

---

[2] BOP Program Statement 6060.08, Urine Surveillance and Narcotic Identification, provides for the establishment of programs of urine testing for drug use and the procedures for urine testing. See also 28 C.F.R. §§ 550.30-32, 550.42.

2

comply, he was then escorted to the Special Housing Unit (SHU)[3] and an incident report was filed.  Compl. Ex. 3, ¶ 24; Compl. Ex. 4.

On October 18, 2006, a disciplinary hearing was held.  Compl. Ex 5.  During this hearing, Plaintiff was afforded the opportunity to present witnesses and documentary evidence, but did not do so.  Id.  Instead, Plaintiff merely denied that he refused to provide a urine sample and argued only that the officer was trying to humiliate him.  Id.  In concluding that Plaintiff improperly refused to provide a urine sample, the disciplinary hearing officer (DHO) explained:

> The DHO considered your statement that the guard was trying to humiliate you when you asked him about the procedures.  However, when you are requested to submit to a urinalysis, it is imperative the officer watch you thoroughly to prevent you from tampering with the specimen.  You were aware of this fact as you stated this to the officer during the incident per your statement during the hearing.  Although this procedure is not comfortable if you are not accustomed to it, it is imperative for the institution to monitor and control the introduction and ingestion of narcotics and alcohol.  You refused to partake in this procedure due to personal reasons, violating a vital policy and are therefore being held accountable.

> Id.

Among other things, the DHO placed Plaintiff on forty-five days of disciplinary segregation and disallowed certain visitation privileges.  Id.  Plaintiff was provided with a copy of the DHO's report on October 25, 2006.  Id.

Plaintiff then filed two regional administrative appeals, on November 9, 2006 and December 14, 2006, respectively, which were both rejected for failure to limit the appeal to no more than one continuation page.  See Compl. Ex. 2, 3.  On both occasions, Plaintiff was permitted to resubmit his regional appeal, to comply with the required limitations.  See id.  After

---

[3]The Special Housing Unit is separate unit for inmates who are unable to function in a less restrictive environment without being a threat to others or to the orderly operation of the institution.  BOP Program Statement, 5212.07, Control Unit Programs, February 20, 2001.

receiving the second rejection, however, rather than resubmitting his regional appeal, Plaintiff

then filed a BP-11 Appeal/Complaint to the BOP's Central Office.  See Compl. ¶ 5; Ex. 1.

Among other things, Plaintiff requested that all charges and sanctions against him be overturned

and that all involved staff receive training and reprimands.  Id.  The BOP rejected this appeal

because "records indicate[d] [that Plaintiff] ha[d] not complete[d] the appeal process at the

region[al level]" and that therefore Plaintiff "submitted [his] request or appeal to the wrong

level." Compl. Ex. 1.

Plaintiff now files the instant action seeking a Writ of Mandamus compelling Defendant

to "review[] and rul[e] on the entire (BP-11) Appeal/Complaint" surrounding the aforementioned

incident.  See Compl.¶ 13.

## ARGUMENT

### I.    This Action Should be Dismissed Because this Court Lacks Jurisdiction Over this Action

#### A.    Plaintiff Has Failed To Exhaust His Administrative Remedies Under The PLRA And Implementing Regulations

Before considering whether mandamus relief is appropriate, a Court must be certain of its

jurisdiction. See In re Asemani, 455 F.3d 296, 299 (D.C. Cir. 2006); In re: Executive Office of

the President, 215 F.3d 20, 25 (D.C. Cir.2000) (dismissing mandamus petition because

jurisdiction lacking).  That jurisdiction is lacking in this case.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, *or any other Federal law*, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  See 42 U.S.C. §1997e(a) (emphasis added).  In Booth

v. Churner, 531 U.S. 731, 740-41& n. 6 (2001), a unanimous Supreme Court held that Congress

mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought and offered through administrative avenues." See also Jackson v. District of Columbia, 254 F.3d 262, 270-271 (D.C. Cir. 2001); Smith v. Zachary, 255 F.3d 446, 451 (7th Cir. 2001). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court reiterated that "... exhaustion in cases covered by § 1997e(a) is . . . mandatory. . ." Id. at 524. In 2006, the Supreme Court again reiterated that, in the PLRA context, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." See Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006).

The administrative remedy process used in the federal prison system and applicable to this matter is nearly identical to that at issue in Booth. Compare Booth, 532 U.S. at 734 with 28 C.F.R. § 542.10 et seq. After an adverse Discipline Hearing Officer report,[4] see, e.g., Compl. Ex. 5, an inmate must first appeal to Regional Director for the region where the inmate is currently housed. See 28 C.F.R. § 542.14(d)(2). If the inmate is dissatisfied with the outcome of the appeal at the regional level, the prisoner may then file an appeal with the Office of General Counsel in Washington, D.C., within thirty days of the date of the Regional Director's decision. See 28 C.F.R. § 542.15. Appeal to the Office of General Counsel is the final administrative appeal in the BOP.[5]

---

[4]According to BOP Program Statement 5270.07, a Discipline Hearing Officer ("DHO") is an independent officer who is responsible for conducting discipline hearings and then imposing appropriate sanctions for incidents of inmate misconduct, pursuant to 28 C.F.R. § 541.15.

[5]In the majority of prisoner complaints, (i.e. those not involving DHO appeals, sensitive issues, Control Unit appeals, and controlled housing status appeals), the appeals process involves a few prior steps: The BOP's regulations require inmates first to attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. See 28 C.F.R. § 542.13. If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden. 28 C.F.R. § 542.14. Only then, if the inmate is not satisfied with the Warden's

In the instant case, Plaintiff has failed to properly exhaust his administrative remedies. He never filed an appropriate appeal at the regional level, having failed on two separate occasions to keep his continuation page within the one-page limit, see Compl. Ex. 2, 3, despite the clear language of the rules stating that an inmate may "use *up to* one letter-size (8 ½" by 11") continuation page."[6] 28 C.F.R. § 542.14(c)(3) (emphasis added).  After each rejected appeal, Plaintiff was given the opportunity to resubmit his appeal, without penalty, upon correcting this deficiency.  See Compl. Ex. 2, 3.  Unable, or unwilling, to do so, he has instead abused the administrative appeals process by submitting an appeal to the Central Office (without any final adjudication at the regional level), and then asking this Court for a Writ of Mandamus to compel the BOP to rule on the premature Central Office appeal.  Plaintiff's misunderstanding of the process is further evidenced by the fact that Plaintiff asks this court to compel BOP Director Lappin to fulfill the duty of reviewing his Administrative Remedies, though he has provided no evidence that this task is within Director Lappin's duties at the BOP.

Plaintiff has been given every opportunity to amend his appeals so that they comply with the regulations.  He has failed to properly exhaust his administrative appeals, and this action must therefore be dismissed under the PLRA and implementing regulations.  See In re Asemani, 455 F.3d at 299; In re: Executive Office of the President, 215 F.3d at 25; Fed. R. Civ. P.

---

response, he may appeal the response at the regional, and eventually national, level.  28 C.F.R. § 542.15.

[6]Plaintiff appears to contend that he did comply with the BOP's directives, arguing that his "exhibits" should not count towards the one-page limit. See Compl. Ex. 2, 3.  However, his five page long "exhibit" entitled "History of the Facts" in his first appeal is, in fact, identical to the "reasons for appeal" required to fit within the form and continuation page.  Such a document is not properly considered an "exhibit" in the common understanding of the word, and is instead an attempt by Plaintiff to circumvent the regulations governing the form of the appeal.

12(b)(1).

**II.      Plaintiff is Not Entitled to the Extraordinary Relief of Mandamus**

The Mandamus Act, provides:

> The district courts shall have original jurisdiction of any action in the
> nature of mandamus to compel an officer or employee of the United States
> or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.  The courts have recognized that a Writ of Mandamus is an extraordinary

remedy, which is rarely appropriate, and only in special circumstances.  See, e.g., Kerr v. United

States District Court for Northern District of Cal., 426 U.S. 394, 402 (1976); Will v. U.S., 389

U.S. 90, 95 (1967) (remaking that "only exceptional circumstances ... will justify the invocation

of this extraordinary remedy"); Williams-Bey v. U.S. Parole Comm'n, 45 Fed.Appx. 1, 1 (D.C.

Cir. 2002) (unpublished) (noting that "[i]ssuance of a writ of mandamus is a 'drastic' remedy to

be used in 'extraordinary situations'" where the petitioner can show a "clear and indisputable

right to the relief sought") (internal citations omitted); In re Bluewater Network, 234 F.3d 1305,

1315 (D.C. Cir. 2000) (observing that "[o]ur consideration of any and all mandamus actions

starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the

most transparent violations of a clear duty to act"); Gonzalez v. Hawk, 1995 W.L. 479722, *1

(D.C. Cir. 1995) (per curiam) ("[m]andamus is an extraordinary remedy to be granted only where

essential to the interests of justice") (citing Starnes v. McGuire, 512 F.2d at 929); Caldwell v.

U.S. Parole Comm'n, 1995 WL 117985, *1 (D.C. Cir. 1995) (per curiam); Jasperson v. Federal

Bureau of Prisons, 460 F. Supp. 2d 76, 86, n. 6 (D.D.C. 2006).

Three elements must exist before a Writ of Mandamus may issue:  (1) the plaintiff must

have "a clear right to relief"; (2) the defendant must have "a clear duty to act"; and (3) there must

be "no other adequate remedy available to plaintiff."  See Power v. Barnhart, 292 F.3d 781, 784

(D.C. Cir. 2002) (citations omitted); <u>Council of and for the Blind of Delaware County Valley,</u>

<u>Inc. v. Regan</u>, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc); <u>Miller v. U.S. Bureau of Prisons</u>,

1997 WL 135713, *2 (D.D.C. 1997); <u>Muhammad v. United States Bureau of Prisons</u>, 789 F.

Supp. 449, 450 (D.D.C. 1992).  A court will only consider issuing a Writ of Mandamus if "the

party seeking issuance of the writ [has] no other adequate means to attain the desired relief, and

[can] demonstrate that his 'right to issuance of the writ is 'clear and indisputable."  <u>See</u> <u>In re</u>

<u>Blodgett</u>, 502 U.S. 236, 241, n. 1 (1992); <u>see also</u> <u>In re Asemani</u>, 455 F.3d 296, 299 (D.C. Cir.

2006); <u>Williams-Bey</u>, 45 Fed.Appx. at 1; <u>In re Sealed Case</u>, 151 F.3d 1059, 1063 (D.C. Cir.

1998).  Thus, where a party seeks relief that may be remedied by other means, mandamus is not

the appropriate remedy.  <u>See</u>, <u>e.g.</u>, <u>Heckler v. Ringer</u>, 466 U.S. 602, 616 (1984); (mandamus is

"intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of

relief"); <u>Kerr</u>, 426 U.S. at 403 (1976).  Even if a plaintiff satisfies all three elements, a court still

has discretion to not grant a writ of mandamus.  <u>See</u>, <u>e.g.</u>, <u>In re Cheney</u>, 406 F.3d 723, 729 (D.C.

Cir.2005) (en banc); <u>Ross v. United States</u>, 460 F.Supp.2d 139, 150, n. 7 (D.D.C. 2006); <u>United</u>

<u>Mine Workers of America, Intern. Union v. Dye</u>, 2006 WL 2460717, *5 (D.D.C. 2006).

     **A.     Plaintiff Has No Clear Right to Relief**

          **1.     Plaintiff's Regional Office appeals did not comply with Agency**
                  **regulations and his Central Office appeal was premature**

The "right" that Plaintiff seeks to have this court enforce is the right to have the BOP's

Central Office review and rule on his appeal before the Regional Office has done so.  <u>See</u> Compl

¶ 5.  BOP Program Statement 1330.13 ¶ 11(c) states that "[w]hen a Request or Appeal is rejected

*and the inmate is not given the opportunity to correct the defect and resubmit*, the inmate may

appeal the rejection . . . to the next appeal level."  <u>Id.</u>; 28 C.F.R. § 524.17(c) (emphasis added).

In this case, though, Plaintiff was given the opportunity to "resubmit [his] appeal in proper form within 10 days" of the rejection notice.  See Compl. Ex. 2, 3.  Because Plaintiff failed to correct the defect in his original regional appeal and the regional office neither heard and ruled adversely on his appeal nor rejected it with no opportunity for Plaintiff to fix the defect, he has no right to bring the appeal to the central office.

Additionally, Plaintiff's underlying contention that his appeals were correctly filed at the administrative level is not demonstrated by the evidence.  BOP Program Statement 1330.13 ¶ 9(b) explicitly states that "[a]n inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the appeal in the space provided on the form.  If more space is needed, the inmate may use up to one letter-size (8 ½" by 11") continuation page."  Id.; 28 C.F.R. § 524.15(b)(3).  Plaintiff attempted to circumvent this requirement by including numerous "exhibits" (totaling nine in the second administrative appeal), which he contends are exempt from the one page requirement.  See Compl. Ex. 2. However, exhibits such as "History and Facts," which he has stretched to fifty-eight paragraphs spanning five pages, contain the information that the regulations mandate be placed on the form plus one additional page.  See Compl. Ex. 3.

### 2.    Plaintiff has only a limited right to privacy

Plaintiff's petition to this court does not ask for a direct adjudication of the merits of his administrative appeal, but it is nevertheless worth noting that said appeal has little merit in the first place.  Although Plaintiff refused to provide a urine sample because he did not want an officer observing him, Plaintiff does not have, and cannot claim, a right to privacy in this situation.  Plaintiff's statement that he did not want to be observed while providing his urine sample (an implied request for privacy) directly conflicts with BOP P.S. 6060.08, Urine

9

Surveillance and Narcotic Identification, which states that staff "shall directly supervise the giving of the urine sample. . . . [S]taff shall keep the inmate under direct visual supervision during this two-hour period, or until a complete sample is furnished."  Id.  BOP policy is necessary to monitor the use of drugs in institutions and the procedures for the collection of urine samples is necessary to ensure that inmates do not contaminate or dilute the samples.[7]

These regulations do not have constitutional implications, since inmates have only a limited right to privacy under the Fourth Amendment.  Hudson v. Palmer, 468 U.S. 517, 526-528 (1984).  In Hudson, the Supreme Court stated

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement.'

Hudson, 468 U.S. at 527-28 (footnote omitted) (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)).  In Bell, the Supreme Court found that in the balance between "the significant and legitimate security interests of the institution and the privacy interests of inmates," BOP policy concerning strip searches of inmates was reasonable.  Bell, 441 U.S. at 560; see also Hudson, 468 U.S. at 524 (finding "it is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, . . . chief among which is internal security").  Preventing and monitoring drug use in prisons is of paramount importance to the safety and security of the institution and other inmates, therefore, the balance should favor the

---

[7]These drug-related precautions are especially applicable to Plaintiff, as his incarceration is due to the illegal production and distribution of methamphetamine out of a lab in his house.  United States v. Beach, 196 Fed. Appx. at 207.

security of the institution over the privacy of the inmate.  See Lucero v. Gunter, 17 F.3d 1347,

1350 (10th Cir. 1994) ("[P]rison officials have a 'significant and legitimate' interest in

preventing unauthorized drug use among prison inmates" and that "[t]he unauthorized use of

narcotics in a detention center by inmates does pose a threat to prison officials' ability to

maintain institutional security.").

3.    Plaintiff has not raised any Constitutional claims

Plaintiff has not alleged any Constitutional claims in his complaint.  Even if plaintiff had

raised a Constitutional claim, Courts have upheld BOP's policy on Urine Surveillance when

inmates have raised Constitutional challenges to the policy.  In Ramey v. Hawk, 730 F.Supp.

1366, 1372-75 (E.D.N.C. 1989) the court found that the Urine Surveillance policy did not violate

the Fourth, Fifth or Eighth Amendments.  In Gomez v. Sniezek, Slip Copy, 2007 WL 171973 at

*4 (N.D. Ohio), the court dismissed an inmate's challenge to the BOP's Urine Surveillance

policy under the Fifth Amendment.  The court also found that the BOP's failure to make testing

accommodations to provide privacy to the inmate in providing a urine sample "does not carry

significant due process implications in light of the exigencies existing in the prison

environment."  Id.

**B.    Defendant Has No Clear Duty to Act**

The issuance of a Writ of Mandamus is only appropriate in the extraordinary

circumstance "where a public official has violated a 'ministerial' duty which is 'so plainly

prescribed as to be free from doubt and equivalent to a positive command.'"  Fine v. Mainella,

2003 WL 22134560, **1 (D.C. Cir. 2003) (citing Consolidated Edison Co. of New York, Inc. v.

Ashcroft, 286 F.3d 600, 605 (D.C. Cir. 2002); Wilbur v. United States, 281 U.S. 206, 218-19

(1929)); see also ICC v. New York, N.H. & H.R. Co., 287 U.S. 178, 204 (1932); United States

11

ex rel. McLennan v. Wilbur, 283 U.S. 414, 420 (1931); Donnelly v. Parker, 486 F.2d 402 (D.C. Cir. 1973). "[W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." Consolidated Edison Co., 286 F.3d at 605 (quoting Wilbur, 281 U.S. at 218-19); see also United States, Ex Rel. West v. Hitchcock, 19 App.D.C. 333 (D.C. Cir. 1902) (recognizing that "courts have no power to control the executive officers of the Government in the performance of duties which involve the exercise of discretion").

Both the Central and Regional Offices were well within this zone of discretion in rejecting Plaintiff's appeals for failure to follow the correct procedures. BOP Program Statement 1330.13 ¶ 11(a) states that the "[c]oordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or Appeal that . . . does not meet any . . . requirement of this part." Id; see also 28 C.F.R. § 542.17(a). The Regional Office did so, twice, because Plaintiff failed to adhere to the one-page limit for his continuation page. See Compl. Ex. 2, 3. It provided Plaintiff with written notice of the reason for the rejection, and offered him a reasonable time period to correct and resubmit the appeal. See 28 C.F.R. §524.17(b). Rather than correct his appeal, Plaintiff instead appealed his rejection, as well as the underlying circumstances, to the Central Office. See Compl. Ex. 1. An inmate may only appeal such a rejection when he "is not given an opportunity to correct the defect and resubmit," and even then the "[c]oordinator at [the next] level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing." 28 C.F.R. § 524.17(c). There is no affirmative duty for the Central Office to "hear and [r]ule" on the

12

complaint, as Plaintiff contends.  See Compl. ¶ 5.

### C.     Plaintiff Has Alternative Remedies Available to Him

Mandamus is an extraordinary remedy which, generally, will not issue if an adequate

alternative remedy, either judicial or administrative, is available.  See, e.g., Power, 292 F.3d at

784 (observing that "the alternative remedies that might call for refusal to resort to writ of

mandamus encompass judicial remedies . . . as well as administrative ones") (citing Cartier v.

Secretary of State, 506 F.2d 191 (D.C. Cir. 1974)); Association of Am. Medical Colleges v.

Califano, 569 F.2d 101, 111, n. 80 (D.C. Cir. 1977); Heckler, 466 U.S. at 616; Kerr, 426 U.S. at

403 (1976).  Plaintiff has not exhausted his administrative remedies because he has continually

failed to follow the correct process at the administrative level.[8]  Plaintiff's failure to pursue

alternative administrative remedies which are available to him are among the reasons that this

Court should not issue a writ of mandamus.

---

[8]Plaintiff's complaint seems to include a charge of sexual harassment.  To the extent that
Plaintiff's claim is a sexual harassment claim, such a claim should be brought under the Eighth
Amendment.  For an inmate to prevail on an Eighth Amendment claim, he must allege that the
deprivation is "objectively, sufficiently serious," and that the officer involved had a "sufficiently
culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks
and citations omitted).  In prison conditions cases, the culpable state of mind required is that of
"deliberate indifference" to an inmate's health or safety.  Id.  The inmate "must show that
officials applied force maliciously and sadistically for the very purpose of causing harm" or "that
officials used force with a knowing willingness that harm occur."  Id. at 835-36 (internal
quotation marks and citations omitted).  A prison official may be liable for acting with deliberate
indifference to inmate health or safety only if the official "knows of and disregards an excessive
risk to inmate health or safety; the official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and he must also draw the
inference."  Id. at 837. In any event, the protections of the Eighth Amendment do not necessarily
extend to verbal harassment that is not "sufficiently severe."  See Chandler v. D.C. Dep't of
Corr., 145 F.3d 1355, 1360-1361 (D.C. Cir. 1998).

**III.    This Court Should Also Not Issue a Writ of Mandamus Because the Stringent Requirements of 18 U.S.C. § 3626(a)(1) Cannot Be Satisfied in this Case**

The provision governing prospective relief[9] within the PLRA is codified at 18 U.S.C

§ 3626(a)(1).  The provision imposes substantial limitations on the issuance of mandamus relief.

Specifically, section 3626(a) provides in relevant part that "[t]he court shall not grant or approve

any prospective relief unless the court finds that such relief is narrowly drawn, extends no further

than necessary to correct the violation of the Federal right, and is the least intrusive means

necessary to correct the violation of the Federal right."  Id.  To satisfy the provision, a court must

make specific findings of the Federal right violated and how the relief granted is narrowly drawn.

See, e.g., Johnson v. Breeden, 280 F.3d 1308, 1326 (11th Cir. 2002) ("[C]onclusory language" is

"not enough to satisfy the requirements of 18 U.S.C. § 3626(a)(1)(A).").

Section 3626(a) also instructs that "[t]he court shall give substantial weight to any

adverse impact on public safety or the operation of a criminal justice system caused by the

relief."  See 18 U.S.C. § 3626(a).  Any order that this court might issue in this case with respect

to the claims made by Plaintiff implicates this clause, in that it will have an "adverse impact" on

the BOP's authority to manage its inmate population and to engage in urine surveillance for drug

testing purposes.  This court should defer to the concerns of prison officials in this regard.  See,

e.g., Beards v. Banks, 126 S.Ct. 2572, 2578 (2006) ("[C]ourts owe substantial deference to the

professional judgment of prison administrators.") (quoting Overton v. Bazzetta, 539 U.S. 126,

132) (internal quotation marks omitted); Women Prisoners of the D.C. Dep't of Corrections v.

District of Columbia, 93 F.3d 910, 931-32 ("Because courts have little experience in the

_____

[9]  The statute defines prospective relief as "all relief other than compensatory monetary damages."  See 18 U.S.C. § 3626(g)(7).

14

'inordinately difficult' task of running a prison, they should give deference to prison officials where possible.") (citing <u>Turner v. Safley</u>, 482 U.S. 78, 85 (1987)).

In this case, there are no federal rights upon which to base any Writ of Mandamus, as has been explained above.  Even if there were, the adverse impact upon the Urine Surveillance program outweighs any equities in favor of Plaintiff.  Thus, this Court should not issue a Writ of Mandamus based on Plaintiff's allegations consistent with 18 U.S.C. § 3626(a).

## IV.   Plaintiff's Case Should be Transferred to a Venue in South Carolina

If the Court declines to dismiss this matter, it should be transferred to South Carolina.  Plaintiff claims that venue is proper in this court "because Defendant is a[n] employee of the United States Department of Justice" in Washington, D.C.  <u>See</u> Compl.¶ 1.  Plaintiff invokes 28 U.S.C. § 1391(e), which states that in any "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his [or her] official capacity or under color of legal authority," venue is proper in one of these three forums: (1) where a defendant in the action resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or a substantial part of property that is the subject of the action is situated; or (3) where the plaintiff resides if no real property is involved in the action.  <u>See</u> 28 U.S.C. § 1391(e).

Even if venue is technically appropriate, the Court of Appeals has recognized that "there is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia."  <u>Starnes v. McGuire</u>, 512 F.2d 918, 925 (D.C. Cir. 1974) (<u>en banc</u>).  Rather, where the records, witnesses, and counsel for the case are located near the prison and there is no issue of national importance raised by the complaint, "transfer of the complaint to the district of the plaintiff's incarceration is indicated."  <u>Id.</u> at 933;

15

see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at 2 (D.D.C. May 2, 1997) ("[t]his

Circuit discourages 'carpetbagging' by prisoners who are incarcerated elsewhere."). Thus, even

if venue were otherwise proper, the Court should also look at the convenience of the parties.

Title 28 U.S.C. §1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district
> court may transfer any civil action to any other district or division where it may
> have been brought.

The D.C. Circuit in Starnes set out a number of factors for a district court to use in deciding

whether to transfer a civil case brought by a prisoner incarcerated outside the District of

Columbia.  Starnes v. McGuire, 512 F.2d 918 (D.C. Cir. 1974).  Those factors are: (1) the

prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the

prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5)

whether the case involves issues of national policy that require the testimony of high-level

administrators located in Washington, D.C.  Id. at 929-33.

These factors strongly suggest the appropriateness of transferring this matter to the

District of South Carolina, where Plaintiff is currently housed.  The alleged events occurred at

FCI Williamsburg, in Salters, South Carolina.   Plaintiff's records are at FCI Williamsburg and

the issues involved are specific to that facility.  Plaintiff is proceeding *pro se*, so no concern

regarding any difficulty communicating with counsel is implicated; however, Plaintiff's

attendance at any proceedings conducted in this District would obviously be problematic.

Plaintiff's claims are individualized and are of no national import.

To the extent this case is able to survive the Government's dispositive motion, it would

be most appropriately litigated in South Carolina where the subject action took place and where

the prison officials involved carried out their duties.  In these circumstances, transfer under

§1404(a) would be entirely appropriate, and serve the interests of both preservation of resources and justice.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's action, and not issue a Writ of Mandamus because Plaintiff fails to meet the stringent standards for obtaining such relief.  In the alternative, the case should be transferred to the United States District Court for the District of South Carolina

Respectfully submitted,

___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

___/s/_____
QUAN K. LUONG
Special Assistant United States Attorney

Of Counsel:

Delaine Martin Hill
Assistant General Counsel
Office of the General Counsel
Litigation Branch
Federal Bureau of Prisons

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of July, 2007, I caused the foregoing Defendant's

Response to the Court's April 28, 2007 Order and Defendant's Motion to Dismiss to be served

on *pro se* Plaintiff, postage prepaid, addressed as follows:

> Edward J. Beach
> R19340-058
> FCI Williamsburg
> P. O. Box 340
> Salters, SC 29590

___/s/_____
QUAN LUONG
Special Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| EDWARD J. BEACH, | ) |
|  | ) |
|        Plaintiff | ) |
|  | ) |
|  | ) Civil Action No. 07-0700 (RJL) |
|     v. | ) |
|  | ) |
| HARLEY LAPPIN. | ) |
|  | ) |
|     Defendant. | ) |

_____)

## ORDER

UPON CONSIDERATION of the Defendant's Response to the Court's April 28, 2007 Order and Defendant's Motion to Dismiss, support thereof, the grounds stated therefor and the entire record in this matter, it is by the Court this ____ day of _____, 2007, hereby

ORDERED that Plaintiff's Writ of Mandamus is DENIED and Defendant's Motion to Dismiss is GRANTED, and it is further

ORDERED that this case is DISMISSED WITH PREJUDICE.

This is a final appealable order.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE